**Wayne VAN de POL, Plaintiff,**

v.

**CAESARS HOTEL CASINO, Defendant.**

**No. CIV. A. 96–1780(JBS).**

United States District Court,
D.   New Jersey.

Sept. 22, 1997.

As Amended Dec. 16, 1997.

Joseph M. Feeney, Louis N. Barbone, Jacobs & Barbone, P.A., Atlantic City, NJ, for Plaintiff.

Jack Gorny, Joseph G. Antinori, Horn, Goldberg, Gorny, Plackter Weiss & Perskie, Atlantic City, NJ, for Defendant.

## OPINION

SIMANDLE, District Judge.

Defendant Caesars Hotel Casino has moved for summary judgment pursuant to Fed.R.Civ.P. 56 on plaintiff's complaint. In this employment discrimination case, plaintiff Wayne Van de Pol seeks a determination by this court that he was terminated from employment in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. §§ 10:5–1, et seq., when he was fired because his neck injury rendered him unable to perform certain of his duties as a Slot Attendant at the casino.

Defendant has moved for summary judgment on the grounds that plaintiff has failed to establish a prima facie case of discrimination under the ADA and NJLAD, as he is either not disabled, or is not qualified to perform the task for which he was employed.[1] The court finds that plaintiff has failed to establish a prima facie case under the ADA and NJLAD, since he is, as a result of his injuries, not qualified to perform his essential duties as a Slot Attendant. Summary judgment is therefore granted in favor of defendant Caesars.

## I. FACTS

The facts, when read in the light most favorable to the plaintiff, are as follows.

Plaintiff Wayne Van de Pol was employed at Caesars Casino as a Slot Attendant from August 1989 through August 1994,[2] at which time plaintiff was terminated by Caesars because his neck injury (a herniated disc in the cervical spine) rendered him unable to perform some of his duties.

Slot Attendants are responsible for, among other things, refilling the slot machine hoppers with bags of coins, and clearing the slot machine hoppers when they become jammed with coins. Performing these tasks usually involves some bending and twisting. In addition, filling the hoppers involves lifting bags of coins, the weight of which varies depending on the denominations of the coins. The bags of coins for dollar and above slot machines weigh twenty-four pounds, while the bags for lesser denominations weigh less. When refilling the hopper, a slot attendant must use a razor or scissors to cut open the bag of coins. When coins jam a slot machine hopper, the nearest available Slot Attendant must clear the jam, which sometimes involves lifting the hopper bowl while it contains coins. When a hopper bowl is full, it can weigh up to thirty pounds. The Caesars casino is divided into sections with several Slot Attendants assigned to each section. Each section contains slot machines of a variety of denominations.

In addition to the duties described above, on a rotating basis once a month, Slot Attendants are required to devote a full day exclusively to refilling the hopper storage areas at the base of the slot machines with spare bags of coins. Prior to his neck injury, plaintiff had already been exempted from this duty due to a preexisting back condition that plaintiff has had since 1977.

On August 20, 1993, plaintiff injured his neck while refilling a fifty cent slot machine hopper with a bag of coins. On August 22, 1993, plaintiff requested a medical leave of absence, which was granted and extended by Caesars for one year. For the six months following the incident, plaintiff was bedrid-

---

[1] Defendant also argues that plaintiff cannot recover under the ADA or NJLAD because he has failed to adequately mitigate damages. This issue is not addressed in this opinion, as the motion can be adequately disposed of on other grounds.

[2] Plaintiff was briefly promoted to a position as a Slot Technician in late 1989, but Caesars found him to be not qualified for this position, and he was reassigned to his former position as a Slot Attendant, in which he remained until he was terminated by Caesars in 1994.

den and unable to move without assistance, due to pain in his neck and fingers and the numbness of the arm and fingers on his right side. Although some of the pain has subsided, plaintiff still has partial paralysis of his right hand, which makes it difficult (though not necessarily impossible) for him to grasp and manipulate small objects such as tools, and to carry large bulky items using both hands.

Plaintiff returned to work on August 16, 1994, just before his paid leave of absence was scheduled to expire. On returning to work, Plaintiff presented his employers with a note from his Doctor, a Dr. Macom, stating that Plaintiff was fit to return to work provided he was not required to lift any weights above 23.9 pounds. Plaintiff has testified that he requested that Dr. Macom rewrite his note to specify a 23.9 pound limit, rather than the 20 pound limit the Doctor had initially chosen, because the Union had informed plaintiff that the dollar coin bags weigh 24 pounds, and that plaintiff might be able to return to work if he showed himself able to lift the coin bags below the dollar amount. At Caesars' request, Plaintiff consulted an orthopaedic surgeon named Dr. Baker, who confirmed that plaintiff had a herniated disc in the cervical spine, and that plaintiff could not perform the duties of a Slot Attendant as listed in the Caesars Job Classification, because he should not do any bending, twisting, or lifting of heavy objects.

Plaintiff requested that he be permitted to return to work and be assigned only to areas of the casino floor where large denomination slot machines did not predominate, and that he be excused from filling dollar and above machines and that he continue to be excused from doing monthly hopper storage fills. Plaintiff's supervisor informed him that such an accommodation would not be possible, and that it was "too risky" for him to return to work in his existing physical condition.

On October 3, 1994, Caesars informed Plaintiff that he was terminated, effective August 23, 1994, because he was unable to perform his duties and had exhausted all the medical leave of absence time available under Caesars' policy.

After his termination from Caesars, Plaintiff looked for work at other casinos and in other fields, but has been unable to find a full time permanent position. The extent and rigor of plaintiff's search for work remains in dispute, but this dispute is not material to the issue addressed in this motion. Plaintiff currently works part-time as a service repairman for a radio station. He has, since leaving Caesars, also worked briefly as a teacher for the Cape May County Vocational School, and as a security guard.

## II. SUMMARY JUDGMENT STANDARD

A court may grant summary judgment when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir.1983). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. *Id.*

In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party. *See Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080–81 (3d Cir.1996); *Kowalski v. L & F Prods.*, 82 F.3d 1283, 1288 (3d Cir.1996); *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. dismissed*, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984).

The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Jalil v. Avdel Corp.*, 873 F.2d 701, 706 (3d Cir.1989), *cert. denied*, 493 U.S. 1023, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990). However,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a show-

ing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders other facts immaterial.

*Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552. In such situations, "the burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554; *Brewer,* 72 F.3d at 329– 330 (citing *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53) ("When the nonmoving party bears the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial.").

## III. *DISCUSSION*

■ Plaintiff has not established a prima facie case of discrimination under the ADA or the NJLAD. The Third Circuit has recently stated this test as follows: "[I]n order to make out a prima facie case under the ADA, a plaintiff must be able to establish that he or she (1) has a 'disability,' (2) is a 'qualified individual,' and (3) has suffered an adverse employment action because of a disability." *Deane v. Pocono Medical Center,* No. 96–7174 (filed Aug. 25, 1997), slip op. at 9.[3] In more specific terms, then, a plaintiff must prove that (1) he has a disability, as defined in § 12102(2) of the ADA, (2) he is a qualified individual who with or without reasonable accommodation can perform the essential functions of the employment position that he holds or desires, and (3) defendant

terminated him or discriminated against him because of his disability. *See* 42 U.S.C.A. § 12112(a), § 12102(2), § 12111(8) (West 1995). Even when read in the light most favorable to the plaintiff, the facts in the record show that plaintiff is not qualified to perform the essential duties of a Caesars Slot Attendant, and that no reasonable accommodations are available that would enable him to do so. Having failed to meet the second prong of the prima facie case, plaintiff is not entitled to the protection of the ADA, and it is therefore not necessary to discuss, whether plaintiff has a "disability" as defined by the ADA, or whether plaintiff was discriminated against. The focus of this discussion will therefore be upon plaintiff's inability to perform the essential functions of his job, and the unavailability of reasonable accommodations. For the reasons next discussed, since no reasonable juror could find that plaintiff was qualified to perform the essential functions of a Caesars Slot Attendant either with or without reasonable accommodations, summary judgment is granted in favor of defendant.

■ The NJLAD relies on the same analytical framework as the ADA. *See McNemar v. The Disney Store, Inc.,* 91 F.3d 610, 618 (3d Cir.1996). Under both statutes, the plaintiff must prove that at all material times he was able to perform the essential functions of his job, with or without accommodation. *See id.* The court will therefore analyze plaintiff's ability to perform his job under ADA law, and all conclusions reached by this court regarding plaintiff's ADA claim apply equally to plaintiff's NJLAD claim.

### A. Plaintiff as a Qualified Individual

■ Plaintiff is not a "qualified individual," as he is unable to perform the essential functions of his job with or without reasonable accommodation.[4] *See* 42 U.S.C.A.

---

3. Following the filing of this opinion, the United States Court of Appeals entered an order vacating its *Deane* opinion and listing that case for rehearing en banc. *Deane v. Pocono Medical Center,* No. 96–7174 (3d Cir., order for rehearing en banc filed October 3, 1997). This court's citations to *Deane* did not extend to *Deane's* holding but instead pertained to dicta in the now-vacated *Deane* opinion which are believed to constitute generally accepted principles of law under the ADA.

4. In determining whether plaintiff is a qualified individual, this court has considered all of the evidence regarding plaintiff's abilities after his injury. The court thereby rejects defendant's argument that plaintiff's claim to be qualified is judicially estopped by his prior sworn representations, in his applications for supplemental social security benefits, workers compensation benefits, and disability insurance benefits, that his injuries render him unable to work.

§ 12111(8) (West 1995). The determination of whether an individual can, with or without reasonable accommodation, perform the essential functions of the position held or sought should be separated into two distinct steps. First, a court should ask whether the disabled individual can perform all the requisite job functions without accommodation. *See Deane,* slip op. at 17 (emphasis omitted). If the individual cannot perform all the job functions without accommodation, then the court must determine whether there exists any reasonable accommodation to which the individual would be entitled that would enable him or her to perform the essential functions of the position. *See id.,* slip op. at 17–18. Plaintiff has the burden of proving that he can perform the essential functions of the position with or without reasonable accommodation. *See Benson v. Northwest Airlines, Inc.,* 62 F.3d 1108, 1112 (8th Cir.1995).

### 1. Could plaintiff perform all job functions without accommodation?

We first examine whether, under any set of facts, plaintiff may be able to prove he can perform all the job functions without accommodation. This step in the analysis can be disposed of with ease, as plaintiff and defendant agree that plaintiff cannot perform all the duties of a Caesars slot attendant without accommodation. Plaintiff has requested that he be excused from performing hopper fills on dollar and above slot machines, and that he continue to be excused from the rotating monthly hopper storage duties. In addition, although plaintiff has not specifically asked to be excused from clearing hopper jams on machines with full hoppers, he has not contested the fact that a full hopper can weigh up to thirty pounds, and that clearing a hopper jam sometimes involves lifting the hopper. The court's analysis will therefore proceed upon the assumption that in addition to his weight limitation for hopper fills, plaintiff cannot clear hopper jams on full machines.

It should be noted that plaintiff's own evidence raises serious doubts regarding whether the lifting limit of 23.9 pounds accurately reflects the full extent of the physical limitations plaintiff would face as a Slot Attendant. As plaintiff explains in his deposition testimony, Dr. Macom had originally imposed a lifting restriction of 20 pounds, but raised the restriction to 23.9 pounds at plaintiff's request, based on advice plaintiff received from his union. Given that the initial injury to plaintiff's neck occurred while he was performing a fifty cent hopper fill, which involved a bag weighing only 20 pounds, Dr. Macom's willingness to raise the weight limit to 23.9 pounds does not inspire much confidence in the reliability of this limit. Dr. Macom is not a specialist in neurology or orthopaedics. He acknowledges, however, that any heavy lifting could cause plaintiff to aggravate his herniated disc, thereby increasing the danger of paralysis. In addition, Dr. Macom has stated that plaintiff would not be a viable candidate for job retraining because his condition requires surgical correction, and yet to date plaintiff has not undergone any surgery. These facts all point to the superior reliability of the recommendations of Dr. Baker, an orthopaedic specialist whom plaintiff consulted at Caesars' request. Dr. Baker found that plaintiff was not physically capable of safely performing any of his duties as a Slot Attendant. Thus it seems likely that even if Caesars had exempted plaintiff from performing any tasks that involved lifting over 23.9 pounds, plaintiff would still have been unable to perform a number of his remaining duties. Nonetheless, the court's analysis will proceed using the 23.9 pound limit asserted by plaintiff, as the outcome of the analysis would be the same either way.

### 2. Are there any reasonable accommodations available which would enable plaintiff to perform the essential functions of the position?

Under the ADA, where an individual is unable to perform all the functions of the position, the inquiry shifts to "whether there exists any reasonable accommodation to which the individual would be entitled that would enable him or her to perform the *essential* functions of the position." *Deane,* slip op at 17–18 (emphasis in original; footnote omitted). If the plaintiff then fails to establish that reasonable accommodations

could be made that would allow him to perform those functions, he does not meet the standard of a qualified individual with a disability. Plaintiff bears the burden of establishing that such accommodations exist. *See Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1112 (8th Cir.1995).

Before determining whether accommodations proposed by plaintiff are reasonable and would enable him to perform the essential functions of the job, the court must first address which if any of the tasks that plaintiff cannot perform are essential functions.

Since defendants concede that the rotating monthly hopper storage duties are not essential functions, a determination need only be made regarding the tasks of dollar and above hopper fills and clearing hopper jams on machines with full hoppers. Although plaintiff and defendant appear to agree that filling hoppers generally is an essential function of Slot Attendants,[5] plaintiff argues that the filling of dollar and above machines constitutes such a small part of the work of Slot Attendants that it should not be classified as an essential duty. Presumably, had he addressed the issue of clearing hopper jams on full slot machines, plaintiff would have made the same argument regarding that task. The court finds that, upon the evidence in the record, no reasonable fact finder could determine that these tasks are not essential.

A job function is an "essential function" where "the reason the position exists is to perform that particular function." *Smith v. Blue Cross Blue Shield of Kansas*, 894 F.Supp. 1463, 1468 (D.Kan.1995). In making this determination, consideration is given to the employer's judgment regarding what functions of the job are essential. *See* 42 U.S.C.A. § 12111(8). According to the written Caesars Job Classification of March 22, 1993, a Slot Attendant's "Essential Func-

tions" include "completing hopper fills" and "keeping slot machines in working order." (Pl.'s Br. at Ex. B.) The Job Classification lists among the job requirements an "ability to lift and carry heavy objects, approximately 30 pounds," to "reach for specific objects at short distances in local working area," to "bend, stoop or kneel," and to "work with tools or equipment, screwdriver, scissors, remote and keys."[6] *Id.* It therefore seems clear that the position of Slot Attendant was created for the purpose of maintaining all slot machines, and the fact that dollar and above machines only constitute a "small number" of the machines in each section does not by itself render the maintenance of those machines any less essential.

Plaintiff offers no evidence to contest defendant's representations that each section of the casino contains a mixture of slot machines accepting various denominations, including dollar and above, that dollar and above machines constitute approximately 21% of the total machines, and that each section routinely has only a few Slot Attendants assigned to it. These facts all suggest that there would be no way to excuse plaintiff from filling dollar and above machines and clearing jams in full machines without placing an additional burden on other Slot Attendants in that section while hampering the efficient discharge of the Slot Attendants' duties. This suggests that being ready to fill any machine on the floor, and being ready to clear any hopper jams that arise are essential functions of a Caesars Casino Slot Attendant.

Since the position of Slot Attendant was created for the purpose of maintaining all slot machines, and since plaintiff is unable to perform hopper fills on the dollar and above machines and would be unable to clear a jam

---

**5.** When asked what his job as Slot Attendant entailed, plaintiff described his duties as hopper fills, hand pay jackpots, clearing hopper jams, and customer service. (*See* Van de Pol dep. February 26, 1997 at 81–82).

**6.** The paralysis in plaintiff's right hand raises serious questions regarding whether he is capable of handling scissors (which are used to cut open the bags of coins during a hopper fill) and

keys (which are used to open the hopper) and screwdrivers (which are sometimes used to clear a hopper jam). Plaintiff contends that the paralysis might make it difficult and painful for him to use small tools, but that he can do so when required. Accordingly, the court's determination that plaintiff is not qualified to perform the essential functions of the job has been made without reference to plaintiff's paralysis, and is based exclusively upon his lifting and bending limitations.

on a machine that was full, plaintiff is not qualified to perform all the essential functions of his job.

Having found that the relevant tasks that plaintiff cannot perform are essential functions, the court must now determine whether any of the accommodations requested by defendant are reasonable and would enable him to perform the essential functions of the job. As explained below, the court finds that such accommodation are not available.

Plaintiff's request that defendant excuse him from performing hopper fills in dollar and above machines must fail, as eliminating an essential function of the job is not a "reasonable accommodation." *See Deane*, n. 18, slip op. at 20, n. 18 (stating that "an employer is never required to reallocate essential functions, as essential functions are, by definition, those that the employee must be able to perform."). *See also Vaughan v. Harvard Indus., Inc.*, 926 F.Supp. 1340, 1349 (W.D.Tenn.1996) (finding unreasonable accommodation where defendant assigned an additional employee to assist plaintiff by performing those essential duties that plaintiff could not perform); *Smith v. Blue Cross Blue Shield of Kansas, Inc.*, 894 F.Supp. at 1469 (finding employer not required to reduce employee's time spent on telephone or transfer her to a non-telephone position where sole and essential purpose of employee's position was to answer telephone inquiries).

Plaintiff claims in the alternative that defendant should have reassigned him to another position in the Casino. This claim also must fail. The ADA provides that reasonable accommodations may include reassignment to a vacant position. *See* 42 U.S.C.A. § 12111(9)(B) (West 1995). Therefore, courts should consider whether reassignment is possible in determining whether an individual is qualified. *See Shiring v. Runyon*, 90 F.3d 827, 832 (3d Cir.1996).[7] However, when an employee contends, in a discrimination action, that he or she would be qualified if given reasonable accommodation, the employee must make "at least a facial showing that such an accommodation is possible." *Id.* Thus a plaintiff who claims an employer should have accommodated him through reassignment must identify the specific positions that were vacant at his current level of seniority and pay whose essential duties he was capable of performing with or without reasonable accommodation. *See id.* (granting summary judgment where there was nothing in the record beyond plaintiff's "vague allegations" that transfers were requested).

In the instant case, plaintiff has not offered any evidence that there were vacant positions at Caesars that he was qualified to fill. Instead, all that is in the record are "vague allegations" that "defendant is a large employer with many different departments and various opportunities for its employees." (*See* Pl.'s Br. at 20.) Although he alleges that "defendant is aware that plaintiff can perform other job duties within the casino which include slot technician, slot attendant, security officer, hard count mechanic, soft count mechanic, coin redemption assistant, and currency mechanic," (*see id.* at 19) the only support he offers for the assertion that he is qualified to perform these jobs is his own deposition testimony, in which he states that *prior* to his injury he had worked in those positions at various times. Plaintiff does not dispute that he has as on several occasions in the past applied for promotions to the positions of Slot Technician and Slot Attendant Supervisor at Caesars, and been found to be not qualified for these positions. Although plaintiff has had over a year in which to conduct discovery, he has made no offer of proof whatsoever that there were positions available at Caesars of a comparable level of seniority and pay at the time of his discharge which he had the training, skills and physical ability to perform. Under

7. *Shiring v. Runyon* is a case brought under the Rehabilitation Act of 1973, § 2 et seq., as amended, 29 U.S.C.A. § 701 et seq., rather than under the ADA. The only relevant difference between the ADA and the Rehabilitation Act is that the Rehabilitation Act governs programs or activities that receive federal financial assistance, while the ADA applies to employers in general. Congress has instructed that consistent standards are to be applied to both acts. *See* 42 U.S.C.A. § 12117(b). Accordingly, the analysis of reasonable accommodation found in *Shiring v. Runyon* applies equally to the instant case.

these circumstances, plaintiff's claim that defendant should have accommodated him by reassigning him to another position must fail.

### CONCLUSION

Plaintiff has not established a prima facie case of discrimination under the ADA or the NJLAD, as he is not qualified to perform the essential duties of a Slot Attendant at Caesars Casino, and no reasonable accommodation was available that would have enabled him to perform those duties. Summary judgment is therefore granted in favor of defendants.

The accompanying Order is entered.

### ORDER

This matter having come before the court upon defendant's motion for summary judgment in the above-captioned case; and the court having considered the submissions of the parties; and for the reasons stated in the opinion of today's date;

IT IS this 22nd day of September 1997 hereby

ORDERED that defendant's motion for summary judgment is **GRANTED.**