718 A.2d 1230 (1998)
315 N.J. Super. 451
Robert SEIDEN, Plaintiff,
v.
MARINA ASSOCIATES d/b/a Harrah's Casino Hotel Atlantic City, Defendants.
Superior Court of New Jersey, Law Division, Atlantic County.
Decided May 21, 1998.
*1231 Richard M. Schall and Patricia A. Barasch, Cherry Hill, for plaintiff (Tomar Simonoff Adourian O'Brien Kaplan Jacoby & Graziano).
Russell L. Lichtenstein, Atlantic City, for defendant (Cooper Perskie April Niedelman Wagenheim & Levenson).
*1232 WINKELSTEIN, P.J.Cv.
Plaintiff claims defendant violated the New Jersey Law Against Discrimination. N.J.S.A. 10:5-1-42(LAD) by failing to accommodate plaintiff's handicap. The issue addressed herein is whether the same methodology used in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to determine the order and nature of proofs to establish the elements of a prima facie case of unlawful discrimination, is required when the claim is not for discrimination due to disparate treatment, but discrimination due to a failure to accommodate a handicap. See Andersen v. Exxon Co., 89 N.J. 483, 492-93, 446 A.2d 486 (1982). For the reasons set forth below, I find that the four prong McDonnell Douglas test, with its burden shifting method to prove a prima facie case of discrimination, need not be applied when the issue is handicap discrimination based upon a failure to accommodate a handicap, rather than disparate treatment.
The issue is placed before the court on a motion by defendant for involuntary dismissal at the end of plaintiff's case. R. 4:37-2(b). "[S]uch a motion shall be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor." Ibid.
Taking all legitimate inferences from the proofs presented, the facts show plaintiff was hired by defendant (Harrah's), a casino located in Atlantic City, as an on-call dealer in blackjack and craps on May 20, 1993. Previously, in August 1992, plaintiff was involved in an automobile accident wherein he sustained severe injuries to his feet and legs. His treating physician, Dr. Christopher T. Born, an orthopedic surgeon, testified that plaintiff's injuries included multiple fractures of his right foot, an open intracartilaginous injury to the right knee, a fracture of the right tibia and right patella, and infrapatellar tendon lacerations. Plaintiff also had multiple fractures of the left foot. He required surgery both on the day of his injury and three days later. The surgery included placement of pins in his foot to assist the fractures in healing. He suffered vascular problems as a result of the right leg lacerations and the fractured tibia. There was testimony that the fractures in his feet would predispose him to post-traumatic swelling following prolonged periods of standing. Both before and during his period of employment plaintiff took anti-inflammatory and pain medication.
When plaintiff began working at Harrah's he was placed on the day shift. He was scheduled to work weekends and holidays, and if he wanted to work additional days, he was required to make his own arrangements with other dealers to take their shifts. Craps and blackjack dealers are required to stand at all times. Plaintiff worked sixty minutes, after which he would have a twenty minute break. The day shift could start anywhere from 7:00 a.m. to 2:00 p.m. and continue for eight hours thereafter. Plaintiff testified that the 2:00 p.m. to 10:00 p.m. shift was the most difficult for him to work, because by the end of the shift his feet and legs were swollen and he suffered excruciating pain. He testified that when he worked the earlier shifts the pain was not as bad and the swelling was less because his legs were fresher.
Plaintiff testified that although he only lived twenty minutes from the casino, after working the 2:00 p.m. to 10:00 p.m. shift he had a difficult time driving home. He said his swollen feet throbbed and he had to stop the car on occasion to massage them. When he got home, he soaked his feet, took additional pain medication and lay in bed with his knee iced and his legs raised.
Despite his physical problems, plaintiff was able to perform all of the functions of his job. He received a perfect evaluation from his supervisor, receiving "all 5's", and was told to keep up the good work.
Sometime in August, as the casino was preparing for its slow season, it reassigned plaintiff and approximately sixteen other on-call dealers to the swing shift. The hours of the swing shift were such that a dealer would start at any time between 5:00 p.m. and 10:00 p.m. and continue for eight hours thereafter. Plaintiff believed, as a result of the problems he was having with his feet and legs, that he would be unable to work the swing shift because by those hours of the day his feet and legs would usually become painful and swollen. With this in mind, he approached *1233 his supervisor and others in casino management and told them of the anticipated problems with his feet and legs if required to work the swing shift. He also obtained a note from his doctor to support his position. Plaintiff asked Harrah's management to accommodate him by either (1) allowing him to remain on the day shift, (2) allowing him to work the swing shift but sit while dealing, or (3) allowing him to work the swing shift while dealing the table for handicapped players as the table was lower to accommodate handicapped players and the dealer usually sat rather than stood while working. According to plaintiff, Harrah's management employees did not ask questions about his medical condition, or engage in any discussion with him concerning how to accommodate him. Instead, they told him that if he could not work the swing shift and continue to deal while standing, he would have to resign.
In early September the new schedules were posted and plaintiff was transferred to the swing shift. His shift was to begin late afternoon and continue for eight hours. Rather than work those hours, plaintiff called his employer, advised the appropriate person of his medical condition, and said he would not be able to work because of his disability. He was marked absent by reason of his failure to appear and on September 14, 1993, he was fired for what defendant described as excessive absenteeism.
Based on these facts plaintiff argues that he has established a cause of action under the LAD based on Harrah's failure to provide to him reasonable accommodation. He argues that defendant failed to consider, let alone agree to, any of plaintiff's proposed accommodations and defendant failed to offer any reasonable alternative accommodations to accommodate his physical disability.
The pertinent provisions of the LAD are as follows:
All of the provisions of the act to which this act is a supplement shall be construed to prohibit any unlawful discrimination against any person because such person is or has been at any time handicapped or any unlawful employment practice against such person, unless the nature and extent of the handicap reasonably precludes the performance of the particular employment.
[N.J.S.A. 10:5-4.1]
Unless it can be clearly shown that a person's handicap ... would prevent such person from performing a particular job, it is an unlawful employment practice to deny an otherwise qualified handicapped... person the opportunity to obtain or maintain employment ... solely because such person is handicapped....
[N.J.S.A. 10:5-29.1.]
As it applies to handicap discrimination, the purpose of the LAD is "to secure to handicapped individuals full and equal access to society, bounded only by the actual physical limits that they cannot surmount." Andersen v. Exxon Co., supra, 89 N.J. at 495, 446 A.2d 486. The statute speaks in terms of any physical disability and it is to be liberally construed. Ibid.
The most common type of cause of action that arises under the LAD, as it pertains to handicapped individuals, is typified by those cases which are classified as disparate treatment cases. The gravamen of a disparate treatment claim is that employees who are not disabled are treated more favorably than a disabled employee. In other words, the employee with the disability has been discriminated against by reason of such disparate treatment. In such a situation, the approach established by McDonnell Douglas, supra, allows the aggrieved employee to present a prima facie case of unlawful discrimination without direct evidence of same. A plaintiff must demonstrate, by a preponderance of the evidence, that (1) plaintiff belongs to a protected class, (2) plaintiff was qualified for the job, (3) plaintiff was terminated despite the qualifications and (4) after termination, the job remained open and the employer sought applicants with plaintiff's qualifications. McDonnell Douglas, supra, 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677. Specifically, as to handicap discrimination, a prima facie case is established by showing (1) the complainant was handicapped within the meaning of the law; (2) the complainant had performed the work at a level that met the employer's legitimate expectations; (3) the complainant nevertheless had been subject to an adverse job action; and (4) the employer had sought another to perform the same work after the *1234 complainant had been removed from the position. Maher v. New Jersey Transit Rail Operations, Inc., 125 N.J. 455, 480-81, 593 A.2d 750 (1991). The fourth element is needed to allow an inference to be drawn of disparate treatment, since if the disabled employee's job was given to a nondisabled person it could be inferred that the disabled employee received the adverse job action because of his or her disability. In the instant case, there was no evidence to establish the fourth element of the test; that Harrah's replaced or sought to replace plaintiff after he was terminated. The question presented is whether the analytical framework set forth in McDonnell Douglas, and followed in Maher, is applicable in a case where the employee does not allege disparate treatment, but rather claims discrimination by reason of a failure to accommodate the handicap.
In McDonnell Douglas, supra, plaintiff, an African-American, was laid-off in a general reduction of the defendant's work force. Plaintiff participated in a protest against alleged discrimination by the defendant in its employment practices. The employee claimed that he was denied continued employment because of his involvement in the protest activities and because of his race. The employer, however, claimed the failure to re-employ the plaintiff was based upon the employee's participation in a "stall-in", when the plaintiff and others blocked access to defendant's place of business. The facts would have supported either claim and the issue for trial was "framed by those opposing factual contentions." McDonnell Douglas, supra, 411 U.S. at 801, 93 S.Ct. at 1824, 36 L.Ed.2d at 677. Thus, the reason for the employer's action in failing to re-employ the plaintiff was put at issue. In such a factual context, the McDonnell Douglas framework allows a plaintiff to prove a prima facie case of discrimination indirectly, since it is generally difficult to show direct evidence of discrimination. To overcome this difficulty, McDonnell Douglas set forth the four prong analysis, which, once met, gives rise to a presumption that the employer unlawfully discriminated against the employee. Andersen, supra, 89 N.J. at 493, 446 A.2d 486. The need for this analysis arises when the facts can support either the claim of the employee, that he or she suffered an adverse employment action due to disparate treatment, or the employer's claim, that the adverse employment action was based upon some other factor. The reason why the employer took the action, whether it was taken with a discriminatory motive, is the critical issue.
In a discrimination case based on an employee's handicap, however, when the claim is a failure by the employer to accommodate the handicap, rather than a claim that the handicapped individual was treated differently from nonhandicapped individuals, such an analysis is not necessary. There is no need to indirectly prove discrimination or pretext. When an otherwise qualified handicapped employee is not reasonably accommodated and suffers an adverse employment action because of his or her disability, that, in itself, is sufficient from which to infer discrimination. As opposed to discrimination based upon race, gender or age, for example, where the law provides that the employer may not treat the employee differently from other employees not within class of persons protected by the statute, the LAD provides that when a person has a handicap as defined under the LAD, an employer must affirmatively act to reasonably accommodate the disabled individual. If by failing to so act the employee experiences an adverse employment action, discrimination may be inferred. There is no need to compare the employer's treatment of a disabled individual with the treatment of other, nondisabled employees. If, as it is alleged in the instant case, the employer denies an employee an opportunity to continue with employment because the employee suffers from a disability that could reasonably be accommodated, but is not, regardless of how other employees are treated, that in itself is an unlawful employment practice and a violation of the LAD. N.J.S.A. 10:5-29.1.
Although no New Jersey state court decision has directly addressed this issue, a number of federal courts have come to a similar conclusion when addressing the propriety of using the McDonnell Douglas burden shifting test as it applies to reasonable accommodation under the American's With Disabilities Act of 1990(ADA), 42 U.S.C. §§ 12101-12213 *1235 and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-796.[1]
The burden shifting test in McDonnell Douglas is not a hard and fast rule under all circumstances, and the requirements may vary with the facts of each case. McDonnell Douglas, supra, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13, 36 L.Ed. 2d at 677-78 n. 13; Matczak v. Frankford Candy & Chocolate Co., 136 F.3d 933 (3d Cir. 1997). As explained in Wooten v. Acme Steel Co., 986 F.Supp. 524, 526-27 (N.D.Ill.1997).
The ADA gives rise to two distinct categories of disability discrimination claims. One is a claim alleging discrimination "under the specific terms of the statute," including a failure to reasonably accommodate an employee's known disability. (citation omitted) The second is a claim for disparate treatment discrimination, i.e., treating a disabled employee differently (than nondisabled employees) because of his disability. (citations omitted) Where the two claims diverge is in the method of proof. Disparate treatment can be shown either with direct evidence or indirectly using the McDonnell-Douglas burden shifting approach. (citations omitted) But burden shifting is not an appropriate method of proving a reasonable accommodation claim; its prima facie case simply mirrors the statutory elements. (citations omitted).
See infra p. 464, 718 A.2d at 1236, Monette v. Electronic Data Systems Corp., 90 F. 3d 1173 (6th Cir.1996).
In Ennis v. National Ass'n Business & Educational Radio, Inc., 53 F. 3d 55 (4th Cir.1995), the court discounted the fourth prong of the McDonnell Douglas test in a handicap discrimination case based on an alleged failure to reasonably accommodate. The court explained its reasons as follows:
First, where disability, in contrast to race, age, or gender, is at issue, the plaintiff in many, if not most, cases will be unable to determine whether a replacement employee is within or without the protected class, that is, whether or not that person is disabled or associates with a disabled person.... Second, even if the plaintiff could obtain such information, requiring a showing that the replacement was outside the protected class would lead to the dismissal of many legitimate disability discrimination claims, ....

[Id. at 58-59.]
The Ennis court concluded that the fourth prong of the McDonnell Douglas test should be reformulated to allow a plaintiff to present some other affirmative evidence that the disability was a determinative factor in the employer's decision.
In Shiring v. Runyon, 90 F. 3d 827 (3d Cir.1996) a post office employee claimed he was discriminated against under the Rehabilitation Act by reason of the employer failing to make reasonable accommodation for a handicap. In such a situation, the Shiring court set forth the following test, without a requirement that the McDonnell Douglas four prong burden shifting test be followed:
[T]he employee bears the burden of demonstrating (1) that he or she has a disability, (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she was nonetheless terminated or otherwise prevented from performing the job.

[Id. at 831.]
Such an analysis seems equally applicable to a claim for failure to reasonably accommodate a handicap under the LAD, since if the proofs support each element of the test, an unlawful employment practice under N.J.S.A. 10:5-29.1 would be established.
In Bultemeyer v. Fort Wayne Community Schools, 100 F. 3d 1281 (7th Cir.1996), Bultemeyer, a former school custodian, brought an action against his employer under the ADA. The allegation was that the school failed to accommodate his mental illness and terminated his employment. The trial court analyzed the case under the McDonnell Douglas burden shifting test. The Court of Appeals reversed, holding that the analysis is *1236 different for a reasonable accommodation claim vis-á-vis a disparate treatment claim. Id. at 1283. Bultemeyer based his claim on a specific provision of the ADA which defined discrimination as follows:
(5)(a) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]; or
(B) denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of [the employer] to make a reasonable accommodation to the physical or mental impairments of the employee or applicant.

[42 U.S.C. § 12112(b)(5)(A)-(B)].
The Bultemeyer court found that if it was proven that the school district should have reasonably accommodated Bultemeyer's disability, and failed to do so, the school district had ipso facto discriminated against him under the plain language of the statute. In such a case there would be no need for indirect proof or burden shifting. Id. at 1283.
In a recent case under both the ADA and the LAD, the United States District Court for the District of New Jersey concluded that when the claim was for failure to reasonably accommodate, both acts required essentially the same test: "a plaintiff must be able to establish that he or she (1) has a `disability,' (2) is a `qualified individual,' and (3) has suffered an adverse employment action because of a disability." Van de Pol v. Caesars Hotel Casino, 979 F.Supp. 308, 312 (D.N.J.1997). See Monette v. Electronic Data Systems Corp., supra, where, in an employment discrimination claim under the ADA, the Court of Appeals for the Sixth Circuit explained that the final prong of the McDonnell Douglas analysis was not needed in a reasonable accommodation case. It was concluded that whether an employer hires other individuals with disabilities is not probative of whether the employer discriminated against the handicapped person in the first instance by failing to accommodate him. Monette, supra, 90 F. 3d at 1186 citing Prewitt v. United States Postal Service, 662 F.2d 292, 307 (5th Cir.1981).
In the case at bar, the facts can be similarly analyzed in light of the language of N.J.S.A. 10:5-29.1 and the regulations promulgated thereunder, N.J.A.C. 13:13-2.5. The statute provides that it is an unlawful employment practice (emphasis added) to deny an otherwise qualified handicapped person the opportunity to continue in employment unless it can be shown that the handicap prevents the person from performing the job. N.J.S.A. 10:5-29.1. The regulations promulgated thereunder require each handicapped employee's ability to perform the job be assessed on an individual basis.
(b) An employer must make a reasonable accommodation to the limitations of a handicapped employee or applicant, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business. The determination as to whether an employer has failed to make reasonable accommodation will be made on a case-by case basis.
1. Under circumstances where such accommodation will not impose an undue hardship on the operation of an employer's business, examples of reasonable accommodation may include:
i. Making facilities used by employees readily accessible and usable by handicapped persons;
ii. Job restructuring, part-time or modified work schedules;
iii. Acquisition or modification of equipment or devices; and
iv. Job reassignment and other similar actions.
2. An employer shall consider the possibility of reasonable accommodation before firing, demoting or refusing to hire or promote a handicapped person on the grounds that his or her handicap precludes job performance.

[N.J.A.C. 13:13-2.5.]
When these regulations are read in conjunction with the statute, the clear purpose is to require the employer to assess the employee's ability to perform the job and *1237 make a reasonable accommodation for the employee's handicap unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business. This must be done before the employee is fired or any other adverse job action is taken.
Plaintiff claims Harrah's failed to assess his handicap, and refused to make a reasonable accommodation such as modifying his work schedule or providing a stool upon which he could sit while dealing. He claims as a result of the refusal to accommodate him, he was fired. These facts, if proven, amount to an unlawful employment practice under N.J.S.A. 10:5-29.1 and N.J.A.C. 13:13-2.5. It is not necessary to analyze the case under the McDonnell Douglas methodology. No burden shifting is needed to allow the employee to establish a prima facie case. The facts if proven, on their face, amount to a violation of the law. The harm to be remedied is the adverse employment action which resulted from the failure to accommodate, not from treating plaintiff differently from other employees.
I therefore find that in a reasonable accommodation case under the LAD, as opposed to a disparate treatment case, the McDonnell Douglas burden shifting methodology need not be applied. What must be demonstrated is whether (1) plaintiff has a disability, (2) plaintiff is otherwise qualified to perform the essential functions of the job, with or without the accommodation by the employer, and (3) whether plaintiff nonetheless suffered an adverse employment action because of the disability. Evidence proving these elements is sufficient on its face to show that N.J.S.A. 10:5-29.1 has been violated and defendant has committed an unlawful employment practice.
The facts in this case support such a conclusion for purposes of the R. 4:37-2(b) motion. The evidence suggests that at the time plaintiff was employed at Harrah's he was still suffering the residuals of his 1992 automobile accident, that after working for long periods of time his legs became swollen and painful, and the later in the day he worked, the more swollen and painful they became. Drawing all reasonable inferences in plaintiff's favor, a jury could clearly find plaintiff was handicapped as defined in the LAD as required to satisfy the first prong of the test.[2]
As to the second prong of the test, whether plaintiff was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation by the employer, there is little dispute. Plaintiff performed his job and received satisfactory ratings while he was employed. There was no dispute that he had the appropriate license to be a dealer and functioned as same until his discharge in September 1993. The proofs are clear that the second element has been met.
The third prong is whether plaintiff suffered an adverse employment action because of the disability. Again, drawing all inferences in plaintiff's favor, it can be concluded that it was because of the disability that he was discharged. The employer transferred plaintiff to the swing shift without allowing him to deal from a stool or sit at a table for handicapped players. No other alternatives were suggested or provided by the employer. The proofs are sufficient for a jury to find that plaintiff was unable to perform on the swing shift due to his disability and as a result he did not appear for work and was fired. Thus, all three elements of the prima facie case have been meet. The motion to dismiss the complaint for failure to meet the McDonnell Douglas test is therefore denied.
NOTES
[1] Reference to federal precedent addressing handicap discrimination in construction of the LAD is well recognized. Andersen, supra, 89 N.J. at 497 n. 3, 446 A.2d 486; Ensslin v. Township of North Bergen, 275 N.J.Super., 352, 364-65, 646 A.2d 452 (App.Div.1994); Lehmann v. Toys `R' Us, Inc., 132 N.J. 587, 600-01, 626 A.2d 445 (1993) citing Grigoletti v. Ortho Pharmaceutical Corp., 118 N.J. 89, 97, 570 A.2d 903 (1990).
[2] A handicap under the LAD need not apply only to severe disability. Andersen, supra, 89 N.J. at 495, 446 A.2d 486. "We need not limit this remedial legislation to the halt, the maimed or the blind. The law prohibits unlawful discrimination against those suffering from physical disability.... The statute speaks in terms of any physical disability. There is simply no basis for limiting its coverage to so-called severe disabilities." Ibid.