**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3424
_____

LAUREEN BULL,

Appellant

v.

UNITED PARCEL SERVICE, INC.


_____

No. 14-3560
_____

LAUREEN BULL

v.

UNITED PARCEL SERVICE, INC.,

Appellant


On Appeal from the United States District Court
for the District of New Jersey
(District Court No. 07-cv-02291)
District Judge:  Honorable Kevin McNulty
Submitted Pursuant to Third Circuit LAR 34.1(a)
April 23, 2015

Before:  CHAGARES, JORDAN, and BARRY, <u>Circuit Judges</u>.

(Filed: July 13, 2015)

_____

OPINION[*]

_____

CHAGARES, Circuit Judge.

This is a New Jersey Law Against Discrimination ("LAD") action arising from an alleged wrongful termination or failure to provide a reasonable accommodation. Appellant Laureen Bull, having suffered an adverse jury verdict, challenges the District Court's denial of her motion for a new trial. Appellee United Parcel Service, Inc. ("UPS") cross-appeals the District Court's denial of its motion for a directed verdict. For the reasons that follow, we will affirm the District Court's denial of Bull's motion for a new trial and dismiss the cross-appeal as moot.

I.

Bull is a 58-year-old woman who worked for UPS in an Edison, New Jersey warehouse from 1986 until 2006. In December 2005, a packaged snow-blower fell on Bull while she was working and caused significant bruising and strain to her right shoulder and neck. Appendix ("App.") 30. Dr. Katalin Hovath initially diagnosed Bull's injuries and imposed a 25-pound lifting restriction. Id. In a follow-up visit a week later, Dr. Hovath maintained the 25-pound lifting restriction and referred Bull to a specialist. App. 38. The specialist, Dr. Teresa Vega, prescribed a 20-pound lifting restriction. App. 49-50.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

During the initial phase of her recovery, Bull performed "light duty" clerical work for UPS. App. 1309. She exhausted her entitlement to light duty work in February 2005 and went on workers' compensation leave. App. 1312.

On March 29, 2006, Dr. Vega determined that Bull had reached maximum medical improvement and removed all prior restrictions except a 10-pound overhead lifting restriction. App. 68, 1249. Bull returned to work at the Small Sorts Department at UPS that day. App. 1314.[1] She initially worked as a "bagger," placing small packages in a mesh bag and transferring them to a conveyor. Id. These bagging duties did not entail overhead lifting. App. 1315, 1880. Bull also worked at a "Sorts" table, placing small packages on chutes. App. 1315-16. This also required no overhead lifting. App. 1316.[2] Bull performed her work without incident. Id.

On April 3, 2006, Janet Liposky[3] asked Bull to help her at a de-bagging station. App. 1847-48. Bull explained that she could not lift anything heavy. App. 1848. At that point, Liposky reached out to Human Relations while Bull finished her shift.

The next day, Liposky approached Bull and told her that she could not assign work to her because she was on permanent disability. App. 1849.[4] UPS's Occupational

---

[1] The jury heard conflicting evidence about whether Bull submitted Dr. Vega's instructions to her manager, Janet Liposky, at that time. See App. 1314, 1845.

[2] However, multiple witnesses at trial testified that Small Sorts work does require lifting up to 70 lbs. App. 1555, 1767-79, 1844.

[3] The parties' briefs and the record spell Liposky's name inconsistently as "Liposky" or "Lipofsky."

3

Health Manager, Kathleen Deady, testified at trial that an employee returning from workers' compensation leave normally must provide a medical note to her supervisor attesting that she can perform the essential job functions. App. 1686-87. Absent such a note, Bull should not have been allowed to return to work in the first place. Id. Deady further testified that if a medical disability prevented an employee from performing the essential functions of a job, Deady's job was to work with the employee to determine if a reasonable accommodation could be made. App. 1626-28. Deady did not participate in any such process with respect to Bull. App. 1628-29. She opined that she would have initiated the process if she had seen Dr. Vega's March 29 note. App. 1688.[5]

Bull contacted her union representative, who told her that UPS needed medical documentation that she was fit. App. 1322-23. There is some evidence of a miscommunication here. Bull's union representative apparently believed – and communicated to UPS – that Bull sought only to return to full duty in Small Sorts. App. 1551, 1767. UPS therefore requested medical notes clearing her for the essential requirements of that position.

---

[4] Bull claims that Liposky fired her during this confrontation, App. 1318, but all other trial witnesses, including Bull's union representative, agree that UPS did not formally terminate her at that time. See, e.g., App. 1617, 1752-54. Bull no longer drew a regular salary, App. 1320-21, but she did receive checks for previously-accrued vacation and holiday pay. App. 1720-21. These checks stopped after May 10, 2007. App. 1730.

[5] Labor Relations Manager Sal Messina cast some doubt on this testimony by asserting that Deady herself apprised him of the contents of Dr. Vega's March 29 note in early April 2006. App. 1539-40, 1548.

In June 2006, Bull saw Dr. Morton Farber and obtained a note assuring UPS that she could lift "50 pounds or more." App. 75. Labor Relations Manager Sal Messina determined this note was not sufficient to return Bull to work. His understanding was that employees in Small Sorts need to be able to lift 70 pounds. App. 1553-55. He did not consult Human Resources or ask Deady to evaluate the possibility of accommodation. App. 1571.

Bull's union representative then told her that UPS required a note saying she could lift 70 pounds. App. 1326. In August 2006, Bull returned to Dr. Farber's office and, without actually seeing Dr. Farber, App. 1484, obtained a note stating that "[the] patient is not able to lift over 70lbs." App. 77. UPS doubted the validity of the new note. App. 1576, 1579, 1589. It contacted Dr. Farber's office for clarification. In September 2006, Dr. Farber faxed UPS a note stating Bull could not lift more than 50lbs. App. 424. UPS advised Bull's union representative that it could not allow her to return to work on the basis of this note. App. 846. Bull's union representative tried to follow up with Bull in September and October, App. 433-34, but Bull did not respond.[6]

In April 2007, Bull filed this suit alleging, among other things, wrongful termination based on her disability. App. 134-51. After a second trial,[7] the case went to the jury. Bull's counsel objected to the formulation of the verdict sheet on the grounds that Interrogatory #3, "Ms. Bull was terminated by United Parcel Service, Inc. (UPS);

[6] Bull allegedly contacted the union in September 2006 about filing a grievance on her behalf but received no response.

[7] The first trial ended in a mistrial.

[Yes/No]," and Interrogatory #4, "In terminating Ms. Bull, UPS discriminated on the basis of her disability; [Yes/No]," App. 103, should have been consolidated into a single question — "UPS's failure to provide a reasonable accommodation resulted in a termination of Miss Bull; [Yes/No]" — and moved to the end of the verdict sheet. App. 103, 1919-20. Bull's argument was that if the jury found in response to Interrogatory #8 that UPS had failed to reasonably accommodate Bull, then as a matter of logic it would have to find that UPS had terminated her. The District Court's formulation of the verdict sheet allowed the jury to find that UPS wrongfully failed to accommodate Bull but did not terminate her employment. And in fact, that was the verdict the jury ultimately delivered.

Bull moved for a new trial on the bases that the verdict sheet was defective and the jury had delivered an internally inconsistent verdict. UPS renewed an earlier motion for judgment as a matter of law based on the argument that the Labor Relations Management Act preempted Bull's claims. The District Court denied both parties' motions. Both parties timely appealed.

II.[8]

---

[8] The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the denial of a motion for a new trial for abuse of discretion. Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007). In determining whether the jury instructions stated the proper legal standard, our review is plenary, but we review the refusal to give a particular instruction or the wording of instructions for abuse of discretion. United States v. Jimenez, 513 F.3d 62, 74 (3d Cir. 2008).

"[A] mistake in a jury instruction constitutes reversible error only if it fails to 'fairly and adequately' present the issues in the case without confusing or misleading the jury." Donlin v. Philips Lighting N. Am. Corp., 581 F.3d 73, 79 (3d Cir. 2009) (quoting United States v. Ellis, 156 F.3d 493, 498 n.7 (3d Cir. 1998)). The structuring of special verdict interrogatories is particularly within the trial court's discretion, and "[t]he only limitation [on this discretion] is that the questions asked of the jury be adequate to determine the factual issues essential to the judgment." McNally v. Nationwide Ins. Co., 815 F.2d 254, 266 (3d Cir. 1987) (second alteration in original).

"When the [jury] answers are inconsistent with each other and one or more is also inconsistent with the general verdict, judgment must not be entered; instead, the court must direct the jury to further consider its answers and verdict, or must order a new trial." Fed. R. Civ. P. 49(b)(4). However, a court may order a new trial based on inconsistent verdicts only if "no rational jury could have brought back the verdicts that were returned." Pearson v. Welborn, 471 F.3d 732, 739 (7th Cir. 2006) (quotation marks omitted). It is our duty "to attempt to harmonize the [jury's] answers, if it is possible under a fair reading of them: '[w]here there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way.'" Gallick v. Baltimore & O.R.R. Co., 372 U.S. 108, 119 (1963) (quoting Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 364 (1962)).

Bull argues that the order of interrogatories in the District Court's jury verdict sheet failed to advise the jury that UPS's failure to accommodate Bull's disability could

7

result in her "de facto" termination. In effect, Bull contends, the verdict sheet gave the jury a mistaken impression that Bull had to prove termination as an independent element in her "failure to accommodate" claim.

"N.J.A.C. 13:13–2.5(b) requires an employer to make a 'reasonable accommodation to the limitations of an employee . . . who is a person with a disability.'" Potente v. Cnty. of Hudson, 900 A.2d 787, 791 (N.J. 2006). Generally, a prima facie case of failure to accommodate under the LAD[9] requires proof that "(1) the plaintiff had a LAD handicap; (2) was qualified to perform the essential functions of the job, with or without accommodation; and (3) suffered an adverse employment action because of the handicap." Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 150 (3d Cir. 2004) (citation omitted). In Victor v. State, the New Jersey Supreme Court considered but did not decide whether a failure to accommodate claim could exist without an adverse employment action. 4 A.3d 126, 149 (N.J. 2010). It noted, however, that the circumstances in which a failure to accommodate did not result in an adverse employment consequence would be rare. Id. at 148-49.

---

[9] Bull pled her claim as one for wrongful termination, not failure to accommodate. See App. 145. However, even when a plaintiff does not plead a failure to accommodate as a separate cause of action, we will analyze her LAD claim under that framework when "an employer, rather than defending [its actions] on the grounds that the employee was terminated for legitimate, non-discriminatory reasons, proffers the employee's inability to perform the job as a defense." Viscik v. Fowler Equip. Co., 800 A.2d 826, 837 (N.J. 2002). Because UPS raised such a defense, the District Court treated Bull's claim as one for failure to accommodate. App. 12.

The jury's finding that UPS failed to accommodate Bull but did not terminate her or discriminate against her on the basis of her disability pulls at that dangling thread in New Jersey law. Bull argues that the jury should not have been asked to find termination as a separate element because UPS's failure to accommodate Bull was a de facto termination. She cites Seiden v. Marina Associates's holding that "[i]f . . . the employer denies an employee an opportunity to continue with employment because the employee suffers from a disability that could reasonably be accommodated . . . that in itself is an unlawful employment practice and a violation of the LAD." 718 A.2d 1230, 1234 (N.J. Super. Ct. Law Div. 1998).

We find the Seiden decision inapposite. The Seiden plaintiff was indisputably fired. The court did not discuss the definition of an adverse employment action but explained that a plaintiff alleging a failure to accommodate does not have to prove anything about the treatment of nondisabled employees. See id. Applying Seiden to the facts here, where Bull has not established an adverse employment action, would collapse the traditional elements of the prima facie case. Although the New Jersey Supreme Court may later decide to strike "adverse employment action" as a distinct element in a failure to accommodate claim, it has not yet done so. See Victor, 4 A.3d at 149. Under current law, it is possible to read the jury's verdict as finding the rare circumstance in which an

employer failed to accommodate an employee but the employee suffered no adverse consequence. We are bound to adopt that reading.[10]

During summations, Bull's counsel argued its theory that UPS's failure to accommodate resulted in a de facto termination. App. 1986. The jury returned a negative verdict.[11] We agree with the District Court that the jury might have believed that UPS did not initially accommodate Bull upon her request to return to work, but neither did it fire her, and communications simply broke down without clear fault. Whether this is the only or even the best reading of the jury's verdict is beside the point: "[w]here there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." Atl. & Gulf Stevedores, Inc., 369 U.S. at 364.

III.

UPS argues on cross-appeal that federal labor law preempts Bull's discrimination claims because her prima facie case requires interpretation of the collective-bargaining agreement between UPS and Bull's union. Because we will affirm the District Court's

---

[10] Bull might have established adverse employment consequences short of outright termination, but she chose to pursue a termination theory. She initially pled her claim as one for wrongful termination, see App. 145 ("Defendant's unlawful termination of Ms. Bull constitutes handicap discrimination within the meaning of the New Jersey Law Against Discrimination."), and she conceded at various points that she would have to prove termination. See Supp. App. 10, App. 835. In her own proposed jury instructions, Bull stated that "[i]n order to make her claim of disability discrimination, [she] must prove by a preponderance of the evidence that . . . she . . . was fired . . . ." Supp. App. 152. The District Court's final jury instructions included this requirement: "[I]t is the plaintiff's burden to show . . . that the plaintiff was fired . . . ." App. 2012.

[11] Counsel did not request that the jury be instructed on the point, but the District Court's jury charges did not rule out such a theory.

10

order denying Bull's motion for a new trial, we will not reach the merits of UPS's cross-appeal. The cross-appeal will therefore be dismissed as moot.

IV.

For the foregoing reasons, we will affirm the order of the District Court denying Bull's motion for a new trial (14-3424), and we will dismiss as moot UPS's cross-appeal from the denial of its motion for a directed verdict (14-3560).