Craig E. LESHNER, Plaintiff,

v.

McCOLLISTER'S TRANSPORTATION SYSTEMS, INC.; McCollister's Moving & Storage, Inc.; John Does 1–10, fictitious persons or corporations, jointly, severally, and alternatively, Defendants.

No. CIV. A. 00–3342 (JEI).

United States District Court, D. New Jersey.

Sept. 13, 2000.

Alan H. Schorr & Associates, P.C. by Alan H. Schorr Marlton, NJ, for Plaintiff.

Schnader Harrison Segal & Lewis, LLP by Louis R. Moffa, Jr., Edward J. McBride, Jr., Cherry Hill, NJ, for Defendants.

## OPINION

IRENAS, District Judge.

Presently before the Court is defendants McCollister's Transportation Systems, Inc. and McCollister's Moving & Storage, Inc.'s motion to dismiss plaintiff Craig E. Leshner's claims brought under the New Jersey Law Against Discrimination. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1367, 1441(a). For the reasons set forth below, Defendants' motion to dismiss is denied.

## I. BACKGROUND

From June 1, 1981 until his termination on November 17, 1999, plaintiff Craig E. Leshner ("Plaintiff") was an employee of defendants McCollister's Transportation Systems, Inc. and McCollister's Moving & Storage ("Defendants"). (Compl. at ¶ 2). Plaintiff claims that, throughout his employment, Defendants consistently overloaded him with work and took advantage

of his able job performance, for which he received excellent reviews. (*Id.* at ¶ 3). In 1991, Plaintiff suffered a nervous breakdown, allegedly as a result of his excessive workload. (*Id.* at ¶ 4). Because of this breakdown, Plaintiff claims, Defendants temporarily reduced his responsibilities, but soon thereafter began adding to them again, despite their awareness of his stress-related problem. (*Id.* at ¶ 5).

In May 1995, Plaintiff suffered another nervous breakdown, again, allegedly due to his excessive workload. Upon his return to work, Defendants gave Plaintiff a new position as Assistant Warehouse Manager of the electronic warehouse. (*Id.* ¶ 6). Although they knew of the cause of Plaintiff's last breakdown, Plaintiff asserts, Defendants gave him additional work, promoting him to Manager of Warehousing Services, which included the electronic warehouse and the off-site crating division. (*Id.* at ¶¶ 7–8).

Plaintiff states that, in August 1996, after the Safety Director and the Safety Supervisor were terminated, Defendants sought to assign those responsibilities to Plaintiff. (*Id.* at ¶ 9). According to Plaintiff, when he protested that the additional duties would be excessive and would cause him undue stress, Defendants told him the additional duties would be only temporary. However, Defendant never relieved him of the additional duties. (*Id.*). Further, Plaintiff contends, Defendants later assigned him the additional responsibilities of the Fleet Administration Department, despite their knowledge of his condition and again over his objections. (*Id.* at ¶ 10). Plaintiff claims that throughout this period, from 1995 to 1998, he repeatedly requested that Defendants reduce his work burden and Defendants persisted in giving him additional work and responsibilities.

According to Plaintiff, in July 1999, Defendants acknowledged that Plaintiff was on the verge of a breakdown due to his excessive workload and relieved him of his responsibilities as Warehouse Manager.

(*Id.* at ¶ 12). Plaintiff contends that, on August 21, 1999, he was reassigned those responsibilities, being told that the warehouse was "falling apart" without him. (*Id.*). On August 25, 1999, Plaintiff suffered yet another nervous breakdown. (*Id.* at 13). Plaintiff alleges that, at the time of this breakdown, he was working six to seven days a week and sixty to seventy hours a week. He states that he held the equivalent of two full-time management positions—the Electronic Warehouse Manager, Crating Manager, and Manager of the Lockheed Martin Project—as well as the full-time position of Safety Manager, which included managing the Fleet Administration Department. (*Id.*).

Plaintiff states that he was diagnosed with major depressive disorder and stress disorder, which was diagnosed as severe with anxiety and insomnia. (*Id.* at ¶ 14). According to Plaintiff, Defendants were advised of this and acknowledged his serious health condition. (*Id.* at ¶ 15). On November 4, 1999, Plaintiff's physician sent a letter to Defendants informing them that Plaintiff would be ready to return to work on November 8, 1999, but could assume only the responsibilities of Safety Manager and no others. (*Id.* at ¶ 16). Plaintiff states that, in response, Defendants insisted that he assume all of the responsibilities he held prior to his most recent breakdown, even though Defendants had at least four different people handle those responsibilities during his absence. (*Id.* at ¶ 17).

On November 12, 1999, Plaintiff's physician informed Defendants that Plaintiff was well enough to assume his responsibilities as Safety Manager, including managing the Fleet Administration Department. (*Id.* at ¶ 18). Plaintiff states that Defendants again refused to reinstate him unless he were able to assume all of his prior responsibilities. (*Id.* at ¶ 19).

During this same period of time, Plaintiff filed a worker's compensation claim,

despite, he alleges, Defendants' efforts to persuade him to file for regular disability. (*Id.* at ¶ 52–53). On November 17, 1999, Defendants terminated Plaintiff's employment. (*Id.* at ¶ 20).

On or about June 20, 2000, Plaintiff filed a complaint against Defendants and John Does 1–10 with the Superior Court of New Jersey, Law Division, Burlington County. On July 11, 2000, the instant action was removed to this Court. Counts I and II allege that Defendants violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5–1, *et seq.* ("NJLAD"), by discriminating against Plaintiff based upon his disability and by failing to provide reasonable accommodation. Count III alleges that Defendants violated the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601, *et seq.*, by failing to reinstate Plaintiff after medical leave. Count IV alleges that Defendants unlawfully retaliated against Plaintiff for filing a worker's compensation claim. Count V repeats these allegations and claims as to John Does 1–10.

On August 24, 2000, Defendants filed a motion to dismiss Counts I and II of the complaint pursuant to Fed.R.Civ.P. 12(b)(6).

## II. RULE 12(b)(6) STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." In considering a Rule 12(b)(6) motion, the court will accept all of the allegations of the complaint as true. *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996). Dismissal of claims under Rule 12(b)(6) should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–

46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Although the court must assume as true all facts alleged, "[i]t is not ... proper to assume that the [plaintiff] can prove any facts that it has not alleged." *Associated General Contractors of Calif., Inc., v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). Finally, when "[c]onfronted with [a 12(b)(6)] motion, the court must review the allegations of *fact* contained in the complaint; for this purpose the court does not consider conclusory recitations of law." *Commonwealth of Pennsylvania v. PepsiCo, Inc.*, 836 F.2d 173, 179 (3d Cir. 1988) (emphasis added).

## III. DISCUSSION

Defendants ask this Court to dismiss Plaintiff's complaint pursuant to Fed. R.Civ.P. 12(b)(6) because: (1) Plaintiff is not qualified to perform the essential functions of his job without reasonable accommodation; and (2) the accommodation that plaintiff sought—reduction of his responsibilities—is unreasonable as a matter of law. In response, Plaintiff argues that he was in fact qualified for the job and that whether the accommodation sought is reasonable is a question of fact for a jury to determine.

The NJLAD states that "[u]nless it can be clearly shown that a person's handicap ... would prevent such person from performing a particular job, it is an unlawful employment practice to deny to an otherwise qualified handicapped ... person the opportunity to obtain or maintain employment, or to advance in position in his job, solely because such person is handicapped...." N.J.S.A. 10:5–29.1. To establish a prima facie case of discrimination under the NJLAD,[1] a plaintiff must

---

1. Due to the statute's being patterned on federal law and the "dearth of New Jersey [case] law on the issue of the employer's obligation to accommodate the physical handicap of an employee," *see Ensslin v. Township of North Bergen*, 275 N.J.Super. 352, 646 A.2d 452, 457–58 (1994), both federal and New Jersey state courts have consistently looked to federal law for guidance in construing the NJLAD. *See, e.g., Olson v. General Elec. Astrospace*, 101 F.3d 947, 956 (finding that NJLAD relies upon same analytical framework as Americans with Disabilities Act ("ADA")); *Lincoln v. Momentum Sys. Ltd.*, 86 F.Supp.2d 421,

demonstrate: (1) that he was handicapped within the meaning of the law; (2) that he had been performing his job at a level that met his employer's legitimate expectations; (3) that he had been fired; and (4) that the employer sought another to perform the same work after he had been removed from the position. *See Maher v. New Jersey Transit Rail Operations, Inc.*, 125 N.J. 455, 593 A.2d 750, 763 (1991). Because the fourth element's function is to allow an inference to be drawn of disparate treatment, the plaintiff need only establish it as to the discrimination claim, and not as to the reasonable accommodation claim. *See Seiden v. Marina Assocs.*, 315 N.J.Super. 451, 718 A.2d 1230, 1234, 1237 (1998). Because Defendants do not challenge that Plaintiff is handicapped, that they fired him, or that they replaced him after his termination, we assume for the purposes of this motion that Plaintiff has satisfied the first, third, and fourth elements.[2] Thus, the Court will focus on the second element.

█ In order to satisfy the second element, Plaintiff has the burden of demonstrating that he "was otherwise qualified to perform the essential functions of the job, with or without accommodation." *Seiden,* 718 A.2d at 1237; *see also Ensslin,* 646 A.2d at 458. Defendants contend that Plaintiff is not qualified to perform the essential functions of the job because, as Plaintiff concedes, he could not safely resume all of his prior responsibilities.

Plaintiff responds that he received excellent reviews throughout his employment and was thus clearly qualified.

Central to this issue is the identification of the "essential functions of the job." While, under the Americans with Disabilities Act, "consideration shall be given to the employer's judgment as to what functions of a job are essential," 42 U.S.C. § 12111(8), the Court must also be wary of employers' defining essential functions in a way which is itself discriminatory. For instance, as Defendants rightly point out, an employer generally does not need to justify a 75 word per minute typing requirement. (Defs.'Reply Br. Supp. Mot. Dismiss at 7) (internal citation omitted). That said, though, the employer can not set the typing requirement intentionally above a person's capacity just so that that person will no longer be qualified.

Further confusing the issue is the fact that the essential functions of Plaintiff's position were not well defined. Unlike, for instance, the situation in *Freeman v. Rollins Envtl. Servs. of New Jersey*, No. CIV. A. 94-1871, 1996 WL 451317 (D.N.J.1996), in which the position at issue had a standard job description, Plaintiff's position was makeshift. When two of his co-workers were terminated, Defendants gave Plaintiff all of their responsibilities, first temporarily, then permanently. When Plaintiff was on leave after his breakdown,

427 n. 5 (D.N.J.2000) (same); *Grigoletti v. Ortho Pharm. Corp.*, 118 N.J. 89, 570 A.2d 903, 906–07 (1990) ("The substantive and procedural standards that we have developed under the State's LAD have been markedly influenced by the federal experience.").

**2.** While there is some question whether some stress disorders constitute disabilities under the ADA, *see Gaul v. Lucent Techs. Inc.*, 134 F.3d 576, 580 n. 3 (3d Cir.1998); *Alm v. Marriott Corp.*, Civ. No. 90–3649, 1991 WL 313897, at *5 (D.N.J.1991), this is less likely to be an issue under the NJLAD, which defines "handicap" more broadly than the ADA's comparable definition of "disability." *See, e.g., Failla v. City of Passaic*, 146 F.3d 149, 153–54 (3d Cir.1998). In contrast to the ADA's requirement that a "disability" "sub-

stantially limit one or more of the major life activities," 42 U.S.C. § 12102(2)(A), the NJLAD defines a "handicapped" person as one suffering from a "physical disability ... or from any mental, psychological, or developmental disability ... which prevents the normal exercise of any bodily or mental functions or is demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques." N.J.S.A. § 10:5–5(q). Moroever, the New Jersey courts have ruled that, because the purpose of the NJLAD is "to secure to handicapped individuals full and equal access to society, bounded only by the actual physical limits that they cannot surmount," it is to be liberally construed. *Andersen v. Exxon Co.*, 89 N.J. 483, 446 A.2d 486, 492 (1982).

Defendants had to distribute his responsibilities to four different people. Thus, Defendants' definition of the "essential functions" of Plaintiff's position are somewhat in doubt. As a result, Defendants' contention that Plaintiff is not qualified is equally in doubt.

As discussed above, the Court can dismiss a claim only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99. At this early stage of the litigation, the Court is reluctant to dispose of Plaintiff's claims until a fuller picture of the facts emerges.

Defendants also contend that Plaintiff's requested accommodation—reduction of his responsibilities—is unreasonable as a matter of law. Plaintiff responds that the question of reasonableness is for a jury to decide. On the point of law, Defendants are correct. Both the federal courts and the New Jersey courts have consistently held, as a matter of law, that elimination of an essential function is not a reasonable accommodation. *See, e.g., Van de Pol v. Caesars Hotel Casino,* 979 F.Supp. 308, 315 (D.N.J.1997); *Freeman,* 1996 WL 451317, at *6; *Ensslin,* 646 A.2d at 459. However, as discussed above, the issue is complicated by the fact that the job description and thus the definition of the essential functions of Plaintiff's position are not clear. It would be one thing if Defendants merely hired one person to replace Plaintiff. But, in this case, Defendants hired four different people to fulfill Plaintiff's responsibilities. As a result, it is too early in the litigation to determine whether Plaintiff's requested accommodation was reasonable.[3] Because Plaintiff's burden of establishing a prima facie is not onerous, *see Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the

Court finds that Plaintiff, on the facts alleged, has satisfied the second element.

It is possible in this case that Plaintiff merely suffered a handicap because of his job, which in turn prevented him from working. This alone is not enough for a discrimination claim. *See Andersen,* 446 A.2d at 497 ("[A]n employer found to have reasonably arrived at an opinion that a job applicant cannot do the job, either because the applicant is unqualified or because of a given handicap, cannot be found liable for discrimination against that applicant.") However, it is also possible that Defendants' insistence that Plaintiff resume all of his prior responsibilities or lose his job constituted discrimination by setting the bar unfairly high. In this case, Defendants consistently increased Plaintiff's workload, despite his protests and despite their knowledge of his stress-related problems. After Plaintiff's last breakdown, they required that he resume all of his prior responsibilities, even though, in his absence, they had had to distribute his responsibilities among four different people. Applying the standard for a motion to dismiss, this Court finds that it is possible that Plaintiff could prove a set of facts in support of his claims which would entitle him to relief.

## IV. CONCLUSION

For the reasons set forth above, this Court denies Defendants' motion to dismiss. The Court will enter the appropriate order.

---

**3.** It is worth noting that, pursuant to the regulations promulgated in conjunction with the NJLAD, "[u]nder circumstances where [an] accommodation will not impose undue hardship on the operation of an employer's business, examples of reasonable accommodation may include ... (ii) job restructuring ... and (iv) job reassignment and other similar actions." N.J.A.C. 13:13–2.5(b)(1).