Paul D. LARESCA, Plaintiff,

v.

AMERICAN TELEPHONE & TELEGRAPH, a corporation, Defendant.

No. Civ:99–5097 (WGB).

United States District Court, D. New Jersey.

May 10, 2001.

Robert M. McCaffery, Leib, Kraus, Grispin & Roth, Scotch Plains, NJ, for plaintiff.

David H. Ganz, Colleen P. Tandy, Collier, Jacob & Mills, P.C., Somerset, NJ, for defendant.

## OPINION

BASSLER, District Judge.

Defendant American Telephone & Telegraph ("Defendant" or "AT & T") moves

for summary judgment under Federal Rules of Civil Procedure, Rule 56.[1] Defendant's motion for summary judgment is **granted.**

## I. BACKGROUND

### A. Facts

In 1984, Plaintiff Paul D. LaResca ("Plaintiff") began working for AT & T as a data processing clerk. Because of seizures caused by his epilepsy, Plaintiff was unable to drive to and from work. Accordingly, Plaintiff relied on family, friends, co-workers to drive him. Beginning in 1996, AT & T's managers, aware of Plaintiff's epilepsy, accommodated Plaintiff by scheduling him for the 12:00 noon until 8:00 p.m. second shift. Then in or about May 1996, Plaintiff elected to take a leave of absence to care for his father, who had become ill.

Plaintiff was scheduled to return to work in September 1997. At that time, there was one opening in the office where he was to work, in the same job title that he held prior to taking leave. That position required him to work the night shift, from 2:00 p.m. until 10:00 p.m. Plaintiff advised AT & T that he was unable to drive and could not obtain public transportation to get home from the train station after working the night shift; therefore, Plaintiff requested that AT & T accommodate his handicap by scheduling him for work during the day shift, from 8:00 a.m. until 4:00 p.m. According to Plaintiff, rather than accommodating his handicap, AT & T simply terminated his employment.

Plaintiff maintains that because his performance reviews were outstanding, AT & T should have accommodated his handicap by: (1) asking employees who worked the day shift to switch shifts with him; (2) rearranging the shifts to allow him to work during the day shift; (3) allowing him to look for other positions within AT & T; (4) accommodating him as AT & T had done in the past.

AT & T disagrees, contending that it had no legal obligation to accommodate Plaintiff's commute to work notwithstanding that AT & T had accommodated Plaintiff in the past. Moreover, AT & T claims that had it assigned Plaintiff to the day shift, it would have violated the terms of the collective bargaining agreement ("CBA") by infringing on the rights of more senior employees. The CBA governed the terms and conditions of all union-represented employees. Plaintiff was a member of the Communications Workers of America during the entire time Plaintiff worked for AT & T. The CBA that covered the last several years of Plaintiff's employment became effective May 28, 1995 ("1995 CBA"). Article 38 of the 1995 CBA, applicable to Data Processing Associate I ("DPA I") employees, such as Plaintiff, provided that twice a year, employees could choose what shift or "tour" they wanted to work, but the ultimate assignments would be made based on seniority. (1995 CBA attached to Appendix in Support of Def.'s Mot. for Summary Judgment as Dep. Ex. D–24, §§ 3(h)(1)(ii) and (iii).)

AT & T also denies having fired Plaintiff. It insists that Plaintiff was removed from the payroll due to job abandonment after Plaintiff failed to report to work for five consecutive days. AT & T claims that rather than try to get to work, Plaintiff simply stayed home although he knew that he was expected to show up for work.

### B. Procedural History

On September 13, 1999, Plaintiff filed suit against AT & T. In the Complaint, Plaintiff alleges discrimination based on his handicap (epilepsy) and failure to ac-

---

**1.** This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1332.

commodate, in violation of the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5–1, *et seq.*, (First Count), breach of contract (Second Count), and breach of the covenant of good faith and fair dealing (Third Count).

Contending that Plaintiff's discrimination claim arose under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, *et seq.*, AT & T removed this case to this Court on October 29, 1999, based on federal question as well as diversity jurisdiction.

AT & T now moves for summary judgment on several grounds. It argues that Plaintiff's accommodation, breach of contract, and breach of the covenant of good faith and fair dealing claims must be dismissed because they are preempted by § 301 of the LMRA. It also contends that Plaintiff cannot establish a prima facie case of discriminatory discharge and that the breach of contract and breach of implied contract claims are facially deficient and untimely. Finally, AT & T also seeks dismissal of Plaintiff's claim for punitive damages.

## II. *DISCUSSION*

### A. *Standard for Summary Judgment*

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Whether a fact is material is determined by the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue involving a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Healy*

*v. New York Life Ins. Co.*, 860 F.2d 1209, 1219 n. 3 (3d Cir.1988).

The moving party has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party satisfies this requirement, the burden shifts to the nonmoving party to present evidence that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548. Once the moving party has carried its burden of establishing the absence of genuine issues of material fact, the nonmoving party "may not rest upon mere allegations or denials" of its pleading, Fed.R.Civ.P. 56(e), but must produce sufficient evidence to reasonably support a jury verdict in its favor, *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505, and not just "some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In determining whether any genuine issues of material fact exist, the Court must resolve "all inferences, doubts, and issues of credibility ... against the moving party." *Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 n. 2 (3d Cir.1983) (citing *Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870, 874 (3d Cir.1972)); *accord Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1077 n. 1 (3d Cir.1996).

Since a motion for summary judgment is designed to go beyond the pleadings, factual specificity is required of a party who opposes such a motion. *Celotex,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Accordingly, in order to defeat a properly supported motion for summary judgment, a party may not merely restate the allegations of his complaint. *Farmer v. Carlson,* 685 F.Supp. 1335, 1339 (M.D.Pa.1988). Moreover, a party cannot rely upon self-serving conclusions, unsupported by specific facts in the record. *Cel-*

*otex,* 477 U.S. at 322–23, 106 S.Ct. 2548. A non-moving party must point to concrete evidence in the record which supports each essential element of his case. *Id.* If the party fails to provide such evidence, then he is not entitled to a trial and the moving-party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(e).

In deciding a summary judgment motion, however, the Court's role is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. If the party opposing summary judgment has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the Court cannot credit the movant's version of events, even if the quantity of the movant's evidence far outweighs that of its opponent. *Big Apple BMW v. BMW of N. Am.,* 974 F.2d 1358, 1363 (3d Cir.1992).

### B. *Preemption Standard*

■ Section 301 of the LMRA states: Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties.

29 U.S.C. § 185(a). In enacting § 301, Congress intended for a uniform body of federal law to govern disputes arising out of labor contracts. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 211, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). The Supreme Court has held that "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." *Id.*

■ Despite the fact that Section 301 was found to preempt numerous claims arising from a collective bargaining agreement, the Supreme Court stopped short of finding that Section 301 fully preempted all state law claims:

[N]ot every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is preempted by § 301 or other provisions of federal labor law ... Clearly, § 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law. In extending the preemptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.

*Id.* at 211–12, 105 S.Ct. 1904. The Supreme Court found that preemption would not arise under either of two circumstances. First, § 301 of the LMRA does not preempt "state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Id.* at 212, 105 S.Ct. 1904. Second, where the state law claim can be resolved without substantially interpreting the collective bargaining agreement itself, the claim is independent of the agreement for § 301 preemption purposes. *Id.* at 220, 105 S.Ct. 1904; *see also Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 409–10, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). That is, only state law claims that are "inextricably intertwined with considerations of the terms of the labor contract" are preempted by § 301. *Lueck,* 471 U.S. at 213, 105 S.Ct. 1904. Therefore, whether federal labor law preempts a state law

claim is to be determined on a case-by-case basis. *See id.* at 220, 105 S.Ct. 1904.

### C. *First Count (LAD)*

#### 1. *Accommodation*

■ The regulations promulgated under the LAD with respect to accommodation provide that

[a]n employer must make a reasonable accommodation to the limitations of a handicapped employee or applicant, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business.

N.J.A.C. 13:13–2.5(b). To establish a *prima facie* case of failure to accommodate under the LAD, Plaintiff must prove that: (1) he was handicapped within the meaning of the law; (2) he was qualified to perform the duties of his position and had been performing his or her work at a level that met AT & T's legitimate expectations; and (3) he nevertheless had been fired. *Seiden v. Marina Assoc.,* 315 N.J.Super. 451, 465–66, 718 A.2d 1230 (Law Div.1998); *see also Leshner v. McCollister's Transportation Systems,* 113 F.Supp.2d 689, 692 (D.N.J. 2000).

■ AT & T insists that Plaintiff must also satisfy a fourth element—whether the employer sought another to perform the same work after the plaintiff was discharged. However, "[b]ecause the fourth element's function is to allow an inference to be drawn of disparate treatment, the plaintiff need only establish it as to the discrimination claim, and not as to the reasonable accommodation claim." *Leshner v. McCollister's Transportation Systems,* 113 F.Supp.2d 689, 692 (D.N.J.2000).

Contrary to AT & T's assertions, *Seiden* has not been overruled by *Svarnas v. AT & T Communications,* 326 N.J.Super. 59, 740 A.2d 662 (App.Div.1999) and does not conflict with *Walton v. Mental Health Ass'n,* 168 F.3d 661 (3d Cir.1999). Both *Svarnas* and *Walton* applied the fourth element in resolving discrimination claims, rather than reasonable accommodation claims.

##### a. *Preemption*[2]

■ AT & T argues that Plaintiff's accommodation claim under the LAD cannot be resolved without interpreting select provisions of the 1995 CBA and is therefore preempted by § 301 of the LMRA. Specifically, AT & T explains that Article 38 of the 1995 CBA, which mandates that shifts be assigned based on seniority, precluded it from granting Plaintiff's request for change to a day shift; it maintains that therefore, the requested accommodation is unreasonable because it would have required violating the CBA and infringing on the seniority rights of other AT & T employees.[3]

The Court does not agree that Plaintiff's accommodation claim is significantly intertwined with the 1995 CBA. With the exception of determining whether Plaintiff is "handicapped" as a matter of law, the remaining elements that Plaintiff must satisfy to establish a *prima facie* case of failure to accommodate are purely factual questions. Therefore, AT & T cannot argue that any of these elements requires interpretation of the 1995 CBA. *See Lingle,* 486 U.S. at 407, 108 S.Ct. 1877 (finding that state law claim for retaliatory discharge involved purely factual questions); *Smolarek v. Chrysler Corp.,* 879 F.2d 1326, 1334

2. AT & T does not argue that Plaintiff's discriminatory discharge claim is preempted by the LMRA.

3. One district court has referred to this issue as "defense preemption." *See Vines v. Sloss Indus. Corp.,* 1996 WL 806682, at *5 n. 2 (N.D.Ala. Nov.25, 1996).

(6th Cir.), *cert. denied*, 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989) (recognizing that a claim for discrimination involves purely factual questions concerning the employer's behavior and does not require interpretation of the collective bargaining agreement).

Indeed, relying on the principles set forth by the Supreme Court in *Lueck* and *Lingle*, in *Carrington v. RCA Global Communications, Inc.*, 762 F.Supp. 632 (D.N.J. 1991), the court concluded that the LAD was not pre-empted by § 301 of the LMRA because "state law discrimination claims under the NJLAD are derived independently from state law, and not from the obligations assumed by the parties under the labor agreement." *Id.* at 641–42. In so holding, the court recognized that following *Lingle*, courts in various circuits have uniformly held that state anti-discrimination laws are not preempted by § 301 of the LMRA.[4] *Carrington*, 762 F.Supp. at 641; *see also Kube v. New Penn Motor Express, Inc.*, 865 F.Supp. 221, 230 (D.N.J.1994) (holding that LMRA did not preempt handicap or retaliatory discharge claims brought under New Jersey law); *cf. Malia v. RCA Corp.*, 794 F.2d 909, 913 (3d Cir.1986), *cert. denied*, 482 U.S. 927, 107 S.Ct. 3210, 96 L.Ed.2d 696 (1987) (holding that an employee's state-law tort claim, which was independent of the collective bargaining agreement, was not preempted by federal labor-contract law).

■ State discrimination laws are generally not preempted by federal labor law because " 'the regulated conduct . . . touches interests so deeply rooted in local

feeling and responsibility that the court cannot infer that Congress intended to deprive the States of the power to act.' " *Carrington*, 762 F.Supp. at 641–42 (citing *Sargent v. Int'l Brotherhood of Teamsters*, 713 F.Supp. 999, 1014 (E.D.Mich.1989)).

Moreover, although AT & T may refer to the CBA in defending its actions, resolution of Plaintiff's claim does not require "interpretation" of the 1995 CBA. The Ninth Circuit has explored this distinction between "reference" to and "interpretation" of a CBA.

> [R]eference to or consideration of the terms of a collective-bargaining agreement is not the equivalent of interpreting the meaning of the terms. If it were, all discrimination actions brought by unionized employees would be preempted because the starting point for every case would have to be the agreement. Although the line between reference to and interpretation of an agreement may be somewhat hazy, merely referring to an agreement does not threaten the goal that prompted preemption—the desire for uniform interpretation of labor contract terms.

*Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 749 (9th Cir.1993); *see also Balcorta v. Twentieth Century–Fox Film Corp.*, 208 F.3d 1102, 1108–09 (9th Cir. 2000).

In *Ramirez*, 998 F.2d 743, the plaintiff alleged that only she and other Hispanics were required to submit jury-service verification forms. The defendant argued that the forms were required by the CBA. The court nonetheless found that:

---

4. The cited decisions are: *Ackerman v. Western Elec. Co., Inc.*, 860 F.2d 1514, 1517 (9th Cir.1988); *Jackson v. Southern California Gas Co.*, 881 F.2d 638, 644 (9th Cir.1989); *Smolarek v.. Chrysler Corp.*, 879 F.2d 1326, 1334 (6th Cir.), *cert. denied*, 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989); *Brown v. Holiday Stationstores, Inc.*, 723 F.Supp. 396, 407 (D.Minn.1989); *Sargent v. Int'l Brotherhood of Teamsters*, 713 F.Supp. 999, 1014 (E.D.Mich. 1989); *Barron v. Safeway Stores, Inc.*, 704 F.Supp. 1555, 1564 (E.D.Wash.1988).

[The employer] errs in equating "reference" with "interpret." The resolution of Ramirez's action will not require the interpretation of the Bargaining Agreement. The Bargaining Agreement will likely be referred to by Ramirez and [the employer] to determine the terms and conditions of employment. But her underlying cause of action is that [the employer] discriminated against her in applying and/or altering those terms and conditions. Although the inquiry may begin with the Bargaining Agreement, it certainly will not end there.

*Id.* at 748–49.

In contrast, in *Vines v. Sloss Indus. Corp.*, 1996 WL 806682 (N.D.Ala. Nov. 25, 1996), the parties disputed whether the plaintiff had, within the meaning of the CBA, "return[ed] to work" such that the plaintiff had retained seniority and the right to return to his job. Concluding that the plaintiff's retaliation claim would involve "a substantial issue of construction and operation of the CBA," the court held that the plaintiff's retaliatory discharge state law claims were preempted by the LMRA. *Id.* at *5; *see also Medrano v. Excel Corp.*, 985 F.2d 230 (5th Cir.1993) (finding that where plaintiff alleged specific provision of CBA discriminated against certain employees, resolution of plaintiff's state law claim required interpretation of CBA).

Here, as in *Ramirez*, the meaning of the collective bargaining agreement, specifically Article 38 of the 1995 CBA, is not in dispute. *See Livadas v. Bradshaw*, 512 U.S. 107, 123–26; 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994) ("[W]hen the meaning of contract terms is not subject to dispute, the bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished"). While AT & T refers to the terms of the 1995 CBA to justify its conduct, Plaintiff does not challenge the validity of any provision of the 1995 CBA or dispute AT & T's rights and obligations under that agreement. In short, Plaintiff does not dispute that the 1995 CBA requires shift assignments to be made based on seniority. Therefore, AT & T's defense only requires reference to, rather than interpretation of, the CBA.

Further, although AT & T relies on Plaintiff's lack of seniority as a defense, Plaintiff does not refute that he does not have the requisite seniority under the 1995 CBA to displace any less senior employee already assigned to the day shift. Thus, seniority is not the litigated issue; rather, the litigated issue is accommodation, e .g. whether AT & T should have asked other employees to switch shifts with him, whether AT & T should have tried to rearrange the shifts.

Those decisions that have found or upheld preemption of state law claims have been in cases where the CBA specifically governed the litigated issues. For example, in *Reece v. Houston Lighting & Power Co.*, 79 F.3d 485 (5th Cir.), *cert. denied*, 519 U.S. 864, 117 S.Ct. 171, 136 L.Ed.2d 112 (1996), the plaintiff's discrimination claim actually "turn[ed] on questions of promotion, seniority, and assignment to training programs, all of which are provided for in the CBA." *Id.* at 487. The Fifth Circuit observed that the plaintiff would have to challenge the employer's rights under the CBA and that therefore, the interpretation of the CBA was "made necessary by an employer defense." *Id.* (emphasis added) (citing Rebecca Hanner White, *Preemption of State Law Claims: A Model for Analysis*, 41 Ala.L.Rev. 377, 427 (1989)). Because the litigated issues were specifically covered in the CBA, the Circuit appropriately upheld the trial court's determination that plaintiff's state

law discrimination claims were preempted by the LMRA.

Similarly, in *O'Brien v. Consolidated Rail Corp.*, 972 F.2d 1 (1st Cir.1992), *cert. denied*, 506 U.S. 1054, 113 S.Ct. 980, 122 L.Ed.2d 134 (1993), a case relied on by AT & T to support its position that Plaintiff's accommodation claim is preempted, seniority was among the litigated issues and was also covered in the CBA. The plaintiff, after being laid off from his position as yardmaster in the Boston area, declined an offer for a position in Springfield, Massachusetts, and instead, applied for a stevedore position in the Boston area. Although the stevedore position was already filled, the plaintiff claimed that due to his seniority, he was entitled under the CBA to "bump" the less senior employee who filled that position. The employer, however, disqualified the plaintiff from being a stevedore, finding that the plaintiff, as a result of having been born without a right hand, was physically incapable of safely performing the duties of a stevedore. After pursuing his administrative remedies, the plaintiff filed suit alleging that the employer had discriminated against him based on his disability in violation of state anti-discrimination law. The employer argued, and the First Circuit agreed, that the plaintiff's state law claims were preempted by the RLA.

The CBA, which mandated that a court determine whether the plaintiff is a "qualified handicapped person," contained rules and regulations governing an employee's fitness and ability to perform safely the functions of a stevedore. Therefore, the

court had to look to the CBA to determine whether the plaintiff was otherwise eligible for the stevedore position. Interpretation of the CBA was also necessary to determine whether the plaintiff was contractually eligible to refuse the position in Springfield and to displace the less senior person in the stevedore position. Seniority and what rights arose therefrom were provided for in the CBA and were clearly in dispute in that case.

AT & T also relies on *Davis v. Johnson Controls, Inc.*, 21 F.3d 866 (8th Cir.), *cert. denied*, 513 U.S. 964, 115 S.Ct. 426, 130 L.Ed.2d 340 (1994). In that case, the employer argued that determining whether it could have reasonably accommodated the plaintiff's request to return to work would require reviewing its obligations under the CBA and interpreting the provisions of the agreement relating to seniority rights. The district court agreed that to resolve the plaintiff's claim, it had to examine the seniority rights of the plaintiff as well as other employees under the CBA. The Eight Circuit upheld the lower court's decision, noting that the plaintiff's contention that the CBA allowed for transfer without alteration of seniority rights, "even if ultimately held to be correct, would perforce require interpretation of the agreement." *Id.* at 868. Unlike this case, in *Davis*, seniority and under what circumstances the CBA permitted transfer were evidently covered in the CBA and were the litigated issues.

■ Finally, AT & T also relies on *Maher v. New Jersey Transit Rail Opers.*, 125 N.J. 455, 593 A.2d 750 (1991).[5] The

---

5. In that case, the plaintiff was partially blind and claimed that his former employer, New Jersey Transit Rail Operations, Inc. ("NJT") violated the LAD by refusing to exempt him from a safety rule requiring him to wear safety glasses. The defendant argued that the plaintiff's state law claim was preempted by

the Railway Labor Act, 45 U.S.C. §§ 151 to 188, ("RLA"), because the CBA incorporated the NJT safety rules and required employees to comply with all such rules. Therefore, the New Jersey Supreme Court concluded that any consideration of the LAD claims required

question, however, of whether a state law claim is "sufficiently independent of federal contract interpretation to avoid preemption is, of course, a question of federal law." *Lueck,* 471 U.S. at 214, 105 S.Ct. 1904. Moreover, because federal law, as discussed above, suggests that Plaintiff's accommodation claim is not preempted by the LMRA, this Court declines to follow *Maher.*

Indeed, as evidenced by *Reece, O'Brien,* and *Davis,* disputes "relating to qualifications and seniority usually require recourse to details that are imbedded in CBAs," *Fant v. New England Power Serv. Co.,* 239 F.3d 8, 15 (1st Cir.2001). As noted earlier, however, accommodation, rather than seniority, is the central litigated dispute in this case. Plaintiff alleges that notwithstanding whether or not the CBA contractually entitled Plaintiff to a day shift assignment, AT & T should have found some way to accommodate his handicap because AT & T had done so in the past. *See Kube v. New Penn Motor Express, Inc.,* 865 F.Supp. 221, 228 (D.N.J. 1994) (recognizing explicitly that when outcome of discrimination claim depends on actual events that transpired between a plaintiff and a defendant, and not on meaning of any provisions of a CBA, there is no federal preemption under § 301 of the LMRA) (citing *Jansen v. Food Circus Supermarkets,* 110 N.J. 363, 378, 541 A.2d 682 (1988)); *see also Smolarek,* 879 F.2d at 1334.

Because Plaintiff's suit does not require inquiry into the meaning of any provisions of the CBA or an examination of the seniority of Plaintiff or his co-workers, the Court finds that Plaintiff's accommodation claim is not inextricably intertwined with considerations of the terms of the 1995 CBA such that it is preempted by § 301.

reference to the terms of the collective bar-

### b. *Duty to Accommodate*

Having determined that Plaintiff's accommodation claim under the LAD is not preempted by federal labor law, the Court must next determine whether Plaintiff's claim must be dismissed as a matter of law.

 AT & T argues that dismissal of the accommodation claim is warranted because AT & T was not obligated to accommodate a commuting problem. More specifically, AT & T claims that the change to day shift sought by Plaintiff is not an "accommodation," that it is legally obligated to provide, but is simply a request for an easier, more convenient commute.

The Court agrees with AT & T. Plaintiff, by his own admission, acknowledged that the only reason he could not work the 2:00 to 10:00 p.m. shift was because of his inability to commute to and from work during those hours. (Pl.'s Dep. Tr. attached as Ex. PL to Appendix in Support of Defendant's Motion for Summary Judgment, 553:21–25; 704:2–7; 714:25–715:3.) A number of courts have held that commuting to and from work is not part of the work environment that an employer is required to reasonably accommodate. For example, in *Bull v. Coyner,* 2000 WL 224807 (N.D.Ill. Feb.23, 2000), the plaintiff suffered from an eye disease that rendered him legally blind. As a result of his vision problems, it was a hardship for the plaintiff to travel to and from work in the evenings. Nonetheless, the employer, despite having full knowledge of the plaintiff's vision problems, changed the plaintiff's work schedule so that the plaintiff was forced to work at nights. The court found there to be no ADA violation for failure to accommodate, noting that even if the employer "may have been insensitive

gaining agreement.

or even malicious in requiring him to work at nights," the employer still had no "legally-imposed obligation to be thoughtful." *Id.* In so holding, the court recognized that under the Americans with Disabilities Act ("ADA"), activities such as commuting to and from work fall outside the scope of the job and are therefore not within the scope of an employer's obligations under the ADA. *Id.* at *9.

Similarly, in *Salmon v. Dade County School Board,* 4 F.Supp.2d 1157 (S.D.Fla. 1998), the court noted that while the ADA required an employer "to provide reasonable accommodations that eliminate barriers *in* the work environment," it did not require an employer "to eliminate those barriers which exist *outside* the work environment." *Id.* at 1163. In that case, the plaintiff, a school guidance counselor, had suffered back injuries that prevented her from sitting or standing for long durations. After driving her car for long periods of time, she would have to stretch and rest her back. The plaintiff sued the school board under the ADA and the Florida Civil Rights Act arguing, among other things, that the school board had failed to accommodate her disability by not transferring her to a school that afforded her a shorter commute. The court rejected the plaintiff's accommodation claim, finding that commuting to and from work was an activity "unrelated to and outside the job." *Id.*

Finally, *Schneider v. Continental Casualty Co.,* 1996 U.S. Dist. LEXIS 19631 (N.D.Ill. Dec. 16, 1996), is also instructive. In that case, the court observed:

> An employer is required to provide reasonable accommodations that eliminate barriers in the work environment, not ones that eliminate barriers outside the work environment. [citation omitted]. For example, an employer would not be required to provide transportation to

work as a reasonable accommodation for an employee whose disability makes it difficult for that employee to use public or private means of transportation, unless the employer provides such transportation for employees without disabilities.

. . .

> In the case at bar CNA was not required to eliminate Schneider's barrier outside of the work environment, i.e., her commute. CNA is not required to transfer Schneider to the Downer's Grove facility as a reasonable accommodation because CNA does not provide such job transfers for employees without disabilities. Nor does CNA provide transportation to work for employees without disabilities who have difficultly [sic] using public or private transportation.

*Id.* at *24–*25.

■ Although these cases involve the ADA rather than the LAD, because of the " 'dearth of New Jersey [case] law on the issue of the employer's obligation to accommodate the physical handicap of an employee,' *see Ensslin v. Township of North Bergen,* 275 N.J.Super. 352[364], 646 A.2d 452, 457–58 (1994), both federal and New Jersey state courts have consistently looked to federal law for guidance in construing the NJLAD." *Leshner,* 113 F.Supp.2d at 692, n. 1; *see e.g., Olson v. General Electric Astrospace,* 101 F.3d 947, 956 (3d Cir.1996) (finding that LAD relies on same analytical framework as ADA).

In refuting AT & T's claim that it was not obligated to accommodate his commuting difficulties, the only legal authority Plaintiff cites to is *Seiden,* 315 N.J.Super. 451, 718 A.2d 1230. That case, however, is distinguishable because it did not involve a commuting problem. In *Seiden,* the plaintiff worked at a casino as a blackjack and craps dealer. Those dealers were re-

quired to stand at all times. As a result of vascular problems in his legs, the plaintiff had difficulty standing for long periods of time at the end of the day when his legs were not as fresh. Therefore, the plaintiff sought a change from the swing shift, which started anywhere from 5:00 p.m. to 10:00 p.m. and continued for eight hours, to the day shift, which started anywhere from 7:00 a.m. to 2:00 p.m. He testified that when he worked the earlier shifts, the pain and swelling in his legs were not as bad. Accordingly, rather than affecting the plaintiff's ability to get to and from work, the plaintiff's shift assignment affected the plaintiff's ability to stand, which was part of his job requirement. In contrast, here, the sole reason Plaintiff could not work the night shift was his inability to obtain transportation home from work.

Accordingly, the Court finds that the change to the day shift sought by Plaintiff was in essence a commuting problem, which AT & T was not legally obligated to accommodate. In view of this decision, the Court need not address AT & T's alternate argument that Plaintiff's accommodation claim should be dismissed as a matter of law because Plaintiff's requested accommodation was per se unreasonable in light of the terms of the 1995 CBA.[6]

### 2. Discriminatory Discharge Claim

■ Generally, the sequence of proof and burdens prescribed by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–805, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) applies

---

**6.** The Third Circuit has held that requiring an employer to infringe the seniority rights of other employees under a CBA is not a reasonable accommodation under the ADA. *See Kralik v. Durbin,* 130 F.3d 76 (3d Cir.1997). The United States Supreme Court has, however, recently granted *certiorari* in *US Airways v.*

to claims brought under the LAD. *Olson v. General Elec. Astrospace,* 101 F.3d 947, 956 (3d Cir.1996); *McKenna v. Pacific Rail Service,* 32 F.3d 820, 824 (3d Cir. 1994); *Grigoletti v. Ortho Pharmaceutical Corp.,* 118 N.J. 89, 570 A.2d 903 (1990).

■ To establish a *prima facie* case of unlawful discharge under the LAD, Plaintiff must prove that: (1) he was handicapped within the meaning of the law; (2) he was qualified to perform the duties of his position and had been performing the work at a level that met AT & T's legitimate expectations; (3) he nevertheless had been fired; and (4) AT & T sought another to perform the same work after Plaintiff was fired. *Maher v. New Jersey Transit R.O.,* 125 N.J. 455, 480–81, 593 A.2d 750 (1991); *Spangle v. Valley Forge Sewer Auth.,* 839 F.2d 171 (3d Cir.1988).

■ If the plaintiff succeeds in meeting the initial burden of establishing a *prima facie* case in a discrimination claim, the burden of production then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its alleged unlawful action. *Olson,* 101 F.3d at 951.

■ In order to defeat a summary judgment motion if the employer answers the plaintiff's *prima facie* case with legitimate, nondiscriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative

*Barnett,* —— U.S. ——, 121 S.Ct. 1600, 149 L.Ed.2d 467, 2001 WL 119988 (April 16, 2001), a case that raises the issue whether a plaintiff is entitled under the ADA to a reassignment to a position although he lacks the seniority ordinarily needed to get that assignment.

cause of the employer's action. *Id.* at 951 (quoting *Sheridan v. E.I. DuPont de Nemours and Co.,* 100 F.3d 1061, 1067 (3d Cir.1996)).

Here, the parties do not dispute that Plaintiff was handicapped within the meaning of the LAD, or that he was qualified to perform the duties of his position and that in the past, Plaintiff had been performing his work at a level that met AT & T's legitimate expectations. AT & T does, however, dispute that it terminated Plaintiff; rather, it insists that Plaintiff abandoned his job when he deliberately chose not to report to work.

The Court need not resolve this dispute because even assuming that Plaintiff has established a *prima facie* case of discriminatory discharge, Plaintiff cannot prevail as a matter of law. AT & T has articulated a legitimate non-discriminatory reason for allegedly terminating Plaintiff—job abandonment; however, Plaintiff has failed to meet his burden to show that AT & T's reason is pretextual. He has not produced any evidence whatsoever from which a factfinder could reasonably either (1) disbelieve AT & T's articulated legitimate reason; or (2) believe that discrimination on the basis of Plaintiff's epilepsy was more likely than not a motivating or determinative cause of AT & T's action.

Therefore, Plaintiff cannot sustain his claims under the LAD for discriminatory discharge or for failure to provide a reasonable accommodation. The First Count of Plaintiff's complaint is **dismissed.** Accordingly, the Court need not address AT & T's contention that Plaintiff is estopped from asserting a claim under the LAD.

### D. *Second and Third Counts (Breach of Contract and Covenant of Good Faith and Fair Dealing)*

Plaintiff claims that AT & T's employment manuals represented that AT & T would not discriminate on the basis of handicap and would offer reasonable accommodations to handicapped employees. Plaintiff maintains that those manuals constituted employment contracts, which AT & T breached when it terminated him. Having concluded that AT & T owed no legal duty to Plaintiff to accommodate his commute and that Plaintiff failed to produce any evidence that his purported discharge was on the basis of his handicap, it follows that Plaintiff's breach of contract and breach of implied covenant of good faith and fair dealing claims must also fail, because those remaining claims are also based on AT & T's alleged failure to accommodate and discriminatory discharge. *See Gaul v. Lucent Technologies Inc.,* 134 F.3d 576, 581 (3d Cir.1998).

Therefore, the Second and Third Counts of Plaintiff's complaint are **dismissed.**

### E. *Punitive Damages*

Because the Court has determined that AT & T's conduct was not improper, Plaintiff is not entitled to punitive damages.

## III. *CONCLUSION*

For the reasons set forth above, the Court **grants** Defendant's motion for summary judgment. Plaintiff's complaint is **dismissed** in its entirety.